**UNITED STATES of America, Plaintiff,**

v.

**Charles E. DYE, Defendant.**

**Crim. No. 69–62.**

United States District Court
W. D. Oklahoma.

Sept. 3, 1969.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Mac Oyler, Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, District Judge.

The Court has under consideration Defendant's Motion to Suppress as evidence the .410 gauge sawed-off shotgun which is the weapon described in the Indictment herein. An evidentiary hearing was conducted on the Motion. Arguments have been heard and briefs have been submitted.

Defendant contends that (1) the Affidavit for Search Warrant is insufficient and does not conform to the "Spinelli" test, (2) the weapon was seized without knowledge that the required making tax therefor had not been paid and there was a failure to file a written application to make and register the weapon and, (3) the entry and search of Defendant's house during which the weapon was observed was illegal and, therefore, its subsequent seizure even with a Search Warrant was tainted and illegal. The Plaintiff opposes each contention and asserts that (1) the Affidavit for Search Warrant is sufficient, (2) the weapon is an illegal firearm by law and may be seized when observed without knowledge regarding the non-payment of tax and no application to make and register, and, (3) the officer observing the weapon in Defendant's house was legally in the house at the time of observing same and the subsequent seizure by a Search Warrant was not tainted and illegal.

The evidence shows that on the day in question a burglary and attempted robbery of a super market had been reported to the Oklahoma City Police. The burglars and robbers left the store in a car. The car was found abandoned about one block from the Defendant's house. In it was a wig seen at the store in the possession of the burglars and robbers. Near the car a cowboy hat was found resembling one observed being worn by one of the burglars and robbers. The car was immediately found to have been reported stolen the previous day. It had rained and there were muddy tracks leading from the car to the hat and to the front door of Defendant's house. A K–9 dog also followed the trail from the car to the hat to the Defendant's front door. No one responded to a knock on the door of the house. Inquiry revealed the house to be occupied by a lady and some young children. In point of time the following of the trail from the store to the abandoned car to the hat to the Defendant's house was very soon after the burglary and attempted robbery. An officer of the Oklahoma City Police Department then entered the house through a window in an effort to apprehend and arrest the two men he had probable cause to believe

were then in the house and who had only shortly before committed the burglary and attempted robbery of the grocery store. In searching the house for the two men, the officer found the .410 gauge sawed-off shotgun in looking under a bed for the men. The weapon was under the mattress. Upon observing the weapon and that it was a sawed-off shotgun with a very short barrel, the officer reported the same to Sgt. Maxwell of the Oklahoma City Police Department who obtained a Federal Search Warrant and with others executed the same seizing the firearms in the process thereof.

■ As to the Affidavit for Search Warrant, it described the premises and the property to be seized as an illegal firearm made from a shotgun in violation of the National Firearms Act and further stated:

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

That on April 17, 1969 I received reliable information, which I believe, from a confidential informant who has in the past furnished reliable information that an illegal firearm as defined in the National Firearms Act; towit, a weapon made from a 410 shotgun, was being stored at the above described premises. The informer stated that he had observed this weapon made from a 410 shotgun in the bedroom of the above described residence earlier on the day of April 17, 1969."

The Court finds the Affidavit for Search Warrant to be sufficient even under the stringent requirements of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Spinelli* basically condemns a search and seizure on a simple assertion of police suspicion supported by innocent-seeming activities. Here, the affidavit reveals that the informant saw the weapon at the location described with his own eyes and that it was an illegal firearm. A "common-sense reading of the entire affidavit" by the magistrate as the quoted language is used in *Spinelli* should satisfy anyone that the affidavit clearly establishes that probable cause existed for the issuance of a search warrant.

■ As to the lack of knowledge regarding paying the tax and the written application to make and register the weapon, the Court finds such knowledge to be unnecessary on the part of the police officer in this case.

Under the National Firearms Act, 26 U.S.C. § 5801 et seq., a tax of $200.00 is imposed against the making or altering of each firearm in the United States and an application in writing to make and register such firearm must also be made. The firearm requiring such tax and application with reference to a shotgun is one having a barrel of less than eighteen inches in length or, if made from a shotgun, if such weapon has an over-all length less than twenty-six inches. The Act makes it unlawful for anyone to have possession of a firearm above described which has at any time been made without the above mentioned tax having been paid and the said application being made. Thus, one possessing a sawed-off shotgun which has been made or altered without the tax having been paid and the application having been made is in possession of an illegal firearm.

When an officer sees such a weapon he is entitled to seize the same and need not be in possession of the information regarding said tax and application. If the tax had been paid and the application to make and register had been made, the same would afford the Defendant a complete defense upon prosecution. 18 U.S.C. § 924(d), 82 Stat. 1224, Pub.Law 90–618. Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933); Reynolds v. United States, 289 F.2d 698 (Tenth Cir. 1961).

■ As to the officer being illegally in the house when the weapon was observed, the Court concludes that the officer had probable cause to believe that a felony or felonies had been committed at the super market and that the culprits who committed the same had secreted themselves in the house involved. The

exigencies of the situation made imperative the entry into the house without a search warrant or arrest warrant to apprehend and arrest the felons under the circumstances of this case. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In these circumstances and under the evidence presented, the officer had a right to pursue the culprits into the house where their tracks plainly led the officer in an attempt to apprehend and arrest them for their crimes. He needed no search warrant or arrest warrant to enter the house to apprehend and arrest those he thus had probable cause to believe had committed the felonies and were then in the house. Being legally in the house, any firearms he observed therein could lawfully be the object of a lawful search warrant and the seizure of the illegal firearm is not tainted in any way.

The Motion to Suppress is, therefore, overruled.